UNITED STATES DISTRICT COURT
MDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA BURCH,
o/b/o J.K,

    Plaintiff,

v.                                                Case No.: 8:16-cv-3524-T-24AAS

NANCY A. BERRYHILL, acting
Commissioner of Social Security,[1]

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    Angela Burch, on behalf of her minor child, J.K., seeks judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. § 405(g). After reviewing the record, I **RECOMMEND** that the Commissioner's decision be **REVERSED and REMANDED**.

**I.    PROCEDURAL HISTORY**

    Ms. Burch applied for SSI on behalf of J.K. alleging disability beginning June 13, 2013. (Tr. 177). Disability examiners denied Ms. Burch's application at the initial and reconsideration levels. (Tr. 61–80). An administrative law judge ("ALJ") held a hearing and, on May 5, 2015, the ALJ issued a decision finding J.K. not disabled. (Tr. 24–37, 45). The Appeals Council denied Ms. Burch's request for a review of the ALJ's decision, making the ALJ's decision the final

---

[1] Nancy A. Berryhill is the Acting Commissioner of Social Security. Under Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Berryhill should be substituted for former Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit due to the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

decision of the Commissioner. (Tr. 1–5). Ms. Burch now seeks review of the Commissioner's final decision in this court. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Statement of the Case

J.K. was six years old when Ms. Burch filed the SSI application, and seven years old when the ALJ held the hearing in this case. (Tr. 47, 177). Ms. Burch claimed that J.K. is disabled due to attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder ("ODD"), speech impairment, slow learning, and behavior problems. (Tr. 62, 228).

### B.   Summary of the ALJ's Decision

The ALJ determined that J.K. was a school-age child and had not engaged in substantial gainful activity when Ms. Burch filed his application. (Tr. 27). After reviewing the entire record, the ALJ found J.K. to have the following impairments: ADHD; receptive and expressive language delay; and ODD. (*Id.*). Despite these findings, the ALJ determined that J.K. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (*Id.*).

The ALJ then concluded J.K. had the following limitations in the six functional domains:

| DOMAIN: | LIMITATION: |
|---|---|
| Acquiring and Using Information | Less than marked |
| Attending and Completing Tasks | Less than marked |
| Interacting and Relating with Others | Marked[2] |
| Moving About and Manipulating Objects | None |
| Caring for Yourself | None |
| Health and Physical Well-Being | None |

---

[2] There is a question whether the ALJ's finding of a marked limitation in attending and completing tasks is a typographical error, but this issue will be addressed later in this Report and Recommendation.

(Tr. 30–37).  Because J.K. did not have an extreme limitation in one domain or marked limitations in two domains, the ALJ found J.K not disabled. (Tr. 37).

### III.   LEGAL STANDARD

#### A.   Standard of Review

Review of the ALJ's decision is limited to determining whether the ALJ applied correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether substantial evidence supports his findings.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted).  In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).  The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision.  *Id.* (citation omitted).  Instead, the court must view the evidence as a whole, considering evidence that is both favorable and unfavorable to the Commissioner's decision.  *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations) (citation omitted).

#### B.   Three-Step Disability Analysis

The ALJ must follow three steps in determining whether a child is disabled.  *See* 20 C.F.R. §§ 416.902(c), 416.924.  At step one, the ALJ must determine whether the child is engaged in substantial gainful activity.  20 C.F.R. § 416.924(b).  Substantial gainful activity is paid work that

requires significant physical or mental activity.  *See* 20 C.F.R. § 416.910.  If the child is not engaged in substantial gainful activity, the ALJ next determines whether the child has an impairment or combination of impairments that: cause marked or severe functional limitations; can be expected to cause death; or has lasted or can be expected to last for a period of at least twelve months.  *See* 20 C.F.R. §§ 416.906, 416.924(c).  If the child does not have a severe medically determinable impairment, then, at step three, the ALJ determines if the child's impairments meet, medically equal, or functionally equal an impairment listed in the Listings.  *See* 20 C.F.R. §§ 416.911(b)(1), 416.924(d), 416.926a(a).

An impairment or combination of impairments "functionally equals" a listing if the impairment "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."  20 C.F.R. § 416.926a(a).  These domains are intended to encapsulate all of what a child can do, and consist of the following: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).

The child has a marked limitation

> when [the child's] impairment(s) interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities. [The child's] day-to-day functioning may be seriously limited when [the child's] impairment(s) limits only one activity or when the interactive and cumulative effects of [the child's] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."

20 C.F.R. § 416.926a(e)(2)(i).

The child has an extreme limitation

> when [the child's] impairment(s) interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities. [The child's] day-to-day functioning may be very seriously limited when [the child's] impairment(s) limits only one activity or when the interactive and cumulative effects of [the child's] impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating [the Commissioner] give[s] to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R § 416.926a(e)(3)(i).

## IV. ANALYSIS

Ms. Burch argues the ALJ's decision should be reversed because: (1) there were inconsistencies in the ALJ's finding about J.K.'s ability to attend and complete tasks; (2) the ALJ improperly considered the medical evidence; (3) the ALJ erroneously concluded that J.K.'s impairments did not meet Listing 112.11; (4) J.K. has marked limitations in at least two domains; and (5) the ALJ improperly discredited Ms. Burch's testimony about J.K.'s impairments. I will address each of Ms. Burch's contentions—albeit in a different order.

### A. Medical Evidence

Ms. Burch submits that the ALJ erred in weighing the medical opinions of the following individuals: Dr. Muhammad Ali; Dr. Craig Kunins; consultative examiner Dr. Daniel Van Ingen; disability determination examiners Drs. Sally Rowley and Lawrence Ettinger; consultative examiner Dr. Ronald Shelby; and speech pathologist Dr. Melissa Grolley. (Doc. 10, pp. 6–14).

### 1. Treating Psychiatrists' Opinions

Ms. Burch argues that the ALJ's failure to even discuss the medical opinion of J.K.'s treating psychiatrist, Dr. Mohammad Ali, is reversible error. (Doc. 10, pp. 6–7). According to Ms. Burch, had the ALJ properly considered Dr. Ali's observations, like J.K.'s fidgeting, irritability, concentration difficulties, and excessive energy, he would have found J.K. disabled. (*Id.* at 7). Therefore, Ms. Burch asks for a remand of the ALJ's decision. (*Id.* at 14).

The Commissioner does not address Dr. Ali's omitted medical opinion. (*See id.* at 14–23).

In assessing medical evidence, the ALJ must specifically state the weight he gives to different medical opinions, and his reasons for doing so. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ must also give the child's treating physician[3] considerable weight, unless good cause for not doing so exists. *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985) (citation omitted). Good cause exists when: (1) the evidence does not bolster the treating physician's opinion; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. *Phillips*, 357 F.3d at 1240–41 (citation omitted). The ALJ's rejection of a treating physician's opinion must be supported by clearly articulated reasons. *Id.* at 1241. Without clearly articulating his reasons for rejecting a treating physician's opinion, the reviewing court cannot determine if the ALJ's decision is rational or supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

---

[3] As an acceptable medical source, a psychiatrist is included in the treating physician analysis when the psychiatrist has, or had, an ongoing treatment relationship with the child. *See* 20 C.F.R § 404.1502(a); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155 (11th Cir. 2004) (applying the treating physician analysis to a treating psychiatrist).

Here, the ALJ did not even mention Dr. Ali's medical notes. (Tr. 24–37). Nor did the ALJ mention Dr. Amaya Ramos's medical notes—the doctor who replaced Dr. Ali as J.K.'s treating psychiatrist. (*See id.*). Among Dr. Ali's observations of J.K. include fidgety and hyper behavior, and difficulty following directions, listening, and completing tasks. (Tr. 303, 310). In her notes about J.K.'s treatment, Dr. Ramos observed impaired attention and concentration. (Tr. 362). With observations as relevant as these from J.K.'s treating psychiatrists, and without the ALJ even discussing these opinions, I cannot determine whether the ALJ's decision is supported by substantial evidence. Therefore, I recommend remanding this case so the ALJ can consider and explain the weight he attributes to J.K.'s treating psychiatrists.[4]

### 2. Dr. Kunins's Opinion

Ms. Burch argues that the ALJ's failure to discuss Dr. Craig Kunins's opinion also requires reversal. (Doc. 10, pp. 7–8). Dr. Kunins is the psychiatrist who examined J.K. at SequelCare of Florida. (Tr. 347). According to Ms. Burch, Dr. Kunins's observations that J.K. is hyperactive and has limited academic, social, and coping abilities, are crucial to the impairments ALJ found J.K. to have. (Doc. 10, p. 7). Therefore, Ms. Burch submits that the ALJ was required to discuss Dr. Kunins's opinion. (*Id.* at 8).

The Commissioner does not claim that the ALJ specifically mentioned Dr. Kunis's opinion in his decision. (*See id.* at 14–23, 24–26, 29–33). Instead, the Commissioner argues that the ALJ's decision is consistent with Dr. Kunins's observation that J.K. was calm and cooperative. (*Id.* at 19–20). Therefore, the Commissioner asserts that substantial evidence supports the ALJ's

---

[4] Because Eleventh Circuit precedent is clear that an ALJ must discuss the opinions of treating physicians, and the ALJ did not do so here, the Court can remand on this issue alone. However, because of the procedural posture of a Report and Recommendation, I will address Ms. Burch's other arguments.

7

determinations that J.K. has less than marked limitations in attending and completing tasks, and interacting and relating with others. (*Id.* at 17, 19)

Like the opinions of Dr. Ali and Dr. Ramos, the ALJ had to specifically state how much weight he gave to Dr. Kunins's opinion. *Winschel*, 631 F.3d at 1179 (citation omitted). Without such a statement, I am unable to determine if the ALJ's decision is supported by substantial evidence. *Id.* (citation omitted). Here, the ALJ did not even mention Dr. Kunins's opinion, much less state how much weight he gave it. (*See* Tr. 29–30). Therefore, I recommend remanding this case so the ALJ can explain how much weight he gives Dr. Kunins's opinion.

### 3. The Remaining Medical Opinions

Ms. Burch argues the ALJ mischaracterized and improperly weighed the remaining medical evidence. (Doc. 10, pp. 8–9 ). As to Dr. Daniel Van Ingen's opinion, Ms. Burch alleges mischaracterization because Dr. Van Ingen actually found J.K. to have concentration difficulties and other problems due to ADHD. (*Id.* at 9). For Ms. Burch, the ALJ's failure to mention these types of observations is reversible error. (*Id.*). As to the opinions of Drs. Rowley, Ettinger, Shelby, and Grolley, Ms. Burch argues the ALJ improperly considered those opinions because good cause did not exist to give their opinions moderate or substantial weight. (*Id.* at 8).

In response, the Commissioner argues Dr. Van Ingen's opinion, as a whole, supports the ALJ's decision. (Doc. 10, pp. 15–16). For example, Dr. Van Ingen's conclusion that J.K.'s memory skills were intact validates the ALJ's determination that J.K. has less than marked limitation in acquiring and using information. (*Id.*). As to the remaining medical opinions, the Commissioner argues that each of the opinions support the ALJ's determinations about J.K.'s limitations in the six domains. (*Id.* at 16, 18, 20–21).

8

As already addressed above, the ALJ failed to explain why he did not give the opinions of J.K.'s treating psychiatrists Drs. Ali and Ramos considerable weight. (*See* Tr. 29–30). Without good cause to discount the treating psychiatrists' opinions, I cannot determine whether substantial evidence supports the ALJ's decision to give substantial weight to the opinions of consultative examiner Dr. Ronald Shelby and speech pathologist Dr. Melissa Grolley. *See Winschel*, 631 F.3d at 1179 (citation omitted). And without good cause to discount the treating psychiatrists' opinions, little weight must be given to the opinions of non-examining Drs. Sally Rowley and Lawrence Ettinger. *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). Therefore, I recommend remanding this case for the ALJ to reconsider the weight given to each of the remaining medical opinions in light of how much weight he gives the opinions of Drs. Ali and Ramos.

To summarize, because the ALJ's decision did not discuss the opinions of J.K.'s treating psychiatrists, I am unable to determine whether the ALJ properly considered the remaining medical evidence. And like the first domino to fall, omitting the treating psychiatrists' opinions similarly affects most of the remaining issues.

**B.     Listing 112.11**

Ms. Burch argues the ALJ's failure to find that J.K.'s impairments meet the requirements of Listing 112.11 is reversible error. (Doc. 10, pp. 23–24). According to Ms. Burch, had the ALJ properly considered Dr. Ali's medical records, he would have found J.K.'s impairments to match those in Listing 112.11. (*Id.* at 23). Ms. Burch refers specifically to Dr. Ali's observations that J.K. appeared hyper, unable to control his impulses, and unable to concentrate as evidence that J.K.'s impairments match Listing 112.11. (*Id.* at 23–24).

The Commissioner simply asserts that the medical evidence the ALJ properly considered failed to show J.K has marked inattention, marked impulsiveness, and marked hyperactivity—all of which are necessary to meet Listing 112.11.  (*Id.* at 24–26).

Listing 112.11 addresses ADHD.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, 112.11 (2013). For a child to meet Listing 112.11, there are two requirements.  *See id.*  First, there must be medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity.  *Id.*  Second, for children between the ages of three and eighteen, there must be medically documented findings of two of the following: (a) marked impairment in age-appropriate cognitive/communicative function; (b) marked impairment in age-appropriate social functioning; (c) marked impairment in age-appropriate personal functioning; or (d) marked difficulties in maintaining concentration.  *See id.*, 112.02(B2).

Here, both Drs. Ali and Ramos made observations relevant to Listing 112.11.  (Tr. 303–05, 310–22, 327–30, 362–69).  Dr. Ali found J.K. hyper, fidgety, and easily distracted.  (Tr. 303, 310).  Dr. Ramos found J.K.'s impulse control poor.  (Tr. 362).  Without knowing how much weight the ALJ gave the treating psychiatrists' opinions, I am unable to determine whether substantial evidence supports his decision as to Listing 112.11.  Therefore, I recommend remanding the decision so the ALJ can reconsider Listing 112.11 in light of how much weight he gives J.K.'s treating psychiatrists.

### C. The Domains

Ms. Burch argues the ALJ erred in not finding J.K. either markedly limited in two domains or extremely limited in one domain. (Doc. 10, pp. 26–29).  Specifically, Ms. Burch discusses three domains she believes are most pertinent.  (*Id.*).  First, Ms. Burch claims Dr. Ali's medical records show J.K. at least markedly limited in acquiring and using information.  (*Id.* at 27).  Then, as to

J.K.'s ability to attend and complete tasks, Ms. Burch asserts that the medical evidence as a whole, especially Dr. Pinnelas's finding in this domain, proves J.K. markedly limited.  (*Id.* at 27–28). And, lastly, as to J.K.'s ability to interact and relate to others, Ms. Burch argues that Ms. Korb's questionnaire matches this domain's wording, and that shows J.K. is markedly limited.  (*Id.* at 28–29).  Ms. Burch does not object to the ALJ's findings as to the other three domains.  (*See id.* at 26–29).

The Commissioner does not discuss the ALJ's findings as to the domains beyond arguing that the medical evidence in the record supports the ALJ's determinations.  (*Id.* at 29–30).

At step three of the disability analysis, the ALJ must determine whether the child's impairments functionally equal a listing by using six domains, including the three at issue here: (1) acquiring and using information; (2) attending and completing tasks; and (3) interacting and relating with others.  *See* 20 C.F.R. § 416.926a(b)(1).  When determining the child's function in the six domains, the ALJ is to consider all the medical evidence in the record.  *See* 20 C.F.R. § 416.926a(a).

Here, because the ALJ failed to discuss the opinions of treating psychiatrists Drs. Ali and Ramos, I cannot determine whether the ALJ properly considered all the medical evidence when he made his determinations as to the domains.  Therefore, I recommend remanding the decision for the ALJ to reconsider his domain determinations in light of the opinions of Drs. Ali and Ramos and how much weight he gives them.

### D. Ms. Burch's Testimony

Ms. Burch argues the ALJ improperly considered her own testimony about J.K.'s impairments. (Doc. 10, pp. 13–14).  Ms. Burch asserts that the ALJ had to analyze her testimony— testimony which is supported by the medical evidence—and not just vaguely refer to it.  (*Id.* at

13–14, 30). For Ms. Burch, the ALJ's failure to properly consider her testimony, along with the ALJ's errors as to the other medical evidence, requires reversal. (*Id.* at 13–14, 30).

The Commissioner argues the ALJ properly found Ms. Burch's testimony not entirely credible because her testimony is undermined by the objective medical evidence. (*Id.* at 31–32). For example, the Commissioner claims that J.K.'s conservative treatment is inconsistent with Ms. Burch's testimony. (*Id.* at 32). And the Commissioner argues that the effectiveness of J.K.'s treatment shows that the impairments are not as severe as Ms. Burch testified. (*Id.*).

To establish a disability based on testimony about pain and other symptoms, the claimant must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). The ALJ may reject testimony about subjective complaints, but that rejection must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

Here, the ALJ did not make a specific finding as to Ms. Burch's credibility. (Tr. 28–30). He need not. *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). The implications of his credibility determination, however, must be obvious to the reviewing court. *Id.* Based on how the ALJ discusses Ms. Burch's testimony, he apparently found Ms. Burch's testimony not entirely credible. For example, in finding that J.K. has less than marked limitation in acquiring and using information, the ALJ points out the inconsistency between Ms. Burch testifying that J.K. struggles with ADHD and her admission that J.K. successfully completed his classes. (Tr. 31). The implication here is that the ALJ did not find Ms. Burch's testimony about J.K.'s ability to learn entirely credible. While focusing on these types of inconsistencies may not be grounds for

reversal, the ALJ's focus on his incomplete summary of the medical evidence is problematic. For example, in determining that J.K. has less than marked limitation in attending and completing tasks, the ALJ referred to how Ms. Burch testified that she has to repeat instructions ten times to J.K. (Tr. 32). The ALJ apparently did not find this testimony credible because he instead gave substantial weight to Dr. Van Ingen's finding that J.K.'s concentration skills were intact. (*Id.*). Therefore, it appears that the ALJ based his determination of Ms. Burch's credibility, at least partially, on the medical evidence.

Due to the ALJ's failure to discuss the opinions of Drs. Ali and Ramos I am unable to determine whether his credibility determination as to Ms. Burch's testimony is based on substantial evidence. If the ALJ were to give the treating psychiatrists' opinions considerable weight, that determination could change the weight he gives to the remaining medical opinions. All of those changes, in turn, could affect his credibility determination as to Ms. Burch's testimony. Therefore, I recommend remanding the decision so that the ALJ can reconsider his credibility determinations as to Ms. Burch's testimony in light of how much weight he gives the opinions of Drs. Ali and Ramos.

**E.    Teachers' Opinions**

Ms. Burch argues the ALJ committed reversible error by improperly giving little weight to the opinions of J.K.'s teachers Beth Anne Dunn and Ashley Korb. (Doc. 10, pp. 10–14).

1.    <u>Ms. Dunn's Reports</u>

Ms. Burch argues that the ALJ erred in giving Ms. Dunn's opinion little weight because the nature and length of Ms. Dunn's relationship with J.K. suggests her opinion should be given substantial weight and treated as if it came from a medical source. (*Id.* at 10). According to Ms. Burch, Ms. Dunn's reports show that J.K. requires help on a daily basis because of problems

associated with ADHD. (*Id.* at 11). Ms. Burch also argues that Ms. Dunn's second report submitted after the ALJ's decision relates back to behavioral problems J.K. exhibited before the ALJ's decision and shows the longitudinal nature of J.K.'s disability. (*Id.*). Had the ALJ and Appeals Council properly considered Ms. Dunn's reports, Ms. Burch asserts that the Commissioner would have found J.K. markedly limited in at least two domains. (*Id.*).

The Commissioner makes a distinction between the two reports Ms. Dunn submitted. (*Id.* at 17, 21–23). The Commissioner argues that Ms. Dunn's report submitted before the ALJ's decision is consistent with the ALJ's finding that J.K. did not have any marked limitations. (*Id.* at 17). For example, the Commissioner points out that, like the ALJ, Ms. Dunn did not state that J.K. had any marked limitations. (*Id.*). And as to Ms. Dunn's report submitted after the ALJ's decision, the Commissioner argues there is nothing in her report to indicate that her observations relate back to J.K.'s condition before the ALJ's decision. (*Id.* at 22). Without Ms. Dunn explicitly stating that her second report relates to the period on or before the ALJ's decision, the Commissioner asserts that the Appeals Council correctly disregarded the new report. (*Id.*).

When determining the severity of a child's impairment, the Commissioner asks for information from the child's parents and teachers. 20 C.F.R § 416.926a(b)(3). In some instances, a teacher's opinion can outweigh a doctor's opinion. *See* Considering Ops. and Other Evid. from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims, SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006).[5] Ignoring testimony from a non-medical source, like a teacher, can be unreasonable in some circumstances and can be grounds for reversal. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1284 (11th Cir. 2004).

---

[5] Although the Commissioner rescinded SSR 06-03p in 2017, the ruling was still in effect at the time of the ALJ's decision in this case. (*See* Tr. 24–37); *see also* Rescission of Soc. Sec. Rulings 96-2p, 96-5p, and 06-3p, SSR 96-2p, 2017 WL 3928298 (Mar. 27, 2017).

14

Here, the ALJ did not ignore Ms. Dunn's report submitted before his decision. On the contrary, the ALJ examined Ms. Dunn's report before attributing it little weight. (Tr. 30). The ALJ gave the report little weight because Ms. Dunn is not an acceptable medical source and because her report failed to specify J.K.'s functional limitations. (*Id.*). For example, although Ms. Dunn discusses "exceptionalities" in J.K.'s behavior, she also concludes that J.K.'s behavioral problems are not severe. (Tr. 242). And, despite these "exceptionalities," Ms. Dunn did not state that J.K. has any marked limitations. (*See id.*). Therefore, because the ALJ did not ignore Ms. Dunn's first report, and giving the report little weight was reasonable, reversal is not necessary on the issue of Ms. Dunn's first report.

Concerning the second report, the Appeals Council will review an ALJ's decision if it receives evidence "that is new, material, and relates to the period on or before [the ALJ's decision], and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R § 404.970(a)(5). New opinion evidence must be chronologically relevant in that the opinion must relate back to the period before the ALJ's decision. *Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1322 (11th Cir. 2015). For reversal to be necessary due to new evidence, the opinion must state that its conclusions are based on, among other things, a review of medical records from the period before the ALJ's decision. *See id.*; *see also Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 864 (11th Cir. 2017) (citing *Washington*, 806 F.3d at 1322).

Here, Ms. Dunn submitted her second report almost four months after the ALJ's decision. (Tr. 264). In the report, Ms. Dunn does not state that her opinion is based on observations or records from the period before the ALJ's opinion. (*See id.*). In fact, Ms. Dunn's second report can be understood to only refer to observations made after the ALJ's decision because it is based on J.K.'s behavior in the new school year and Ms. Dunn suggests J.K. displayed signs of dyslexia,

15

a disorder not previously discussed in J.K.'s application for benefits. (*Id.*, Tr. 62, 228). But even if Ms. Dunn's report related back to the period before the ALJ's decision, much of what she observes is similar to what she included in her first report. (Tr. 264, 242). For these reasons, Ms. Burch failed to show how Ms. Dunn's second report sufficiently contains new evidence or relates to the period before the ALJ's decision. Therefore, reversal is not necessary on the issue of Ms. Dunn's second report.

    2.  Ms. Korb's Questionnaire

Ms. Burch argues the ALJ improperly analyzed another teacher's opinion, that of Ms. Ashley Korb. (Doc. 10, pp. 12–13). Ms. Burch asserts that the ALJ should have more closely considered what Ms. Korb observed in J.K.'s behavior, including: problems recalling and applying learned material; difficulty staying focused; working below grade-level expectations; a tendency to distract others; and working at a questionable pace. (*Id.* at 12). For Ms. Burch, the ALJ's failure to consider all of Ms. Korb's observations requires remand. (*Id.* at 13).

The Commissioner claims that Ms. Korb's questionnaire actually supports the ALJ's decision. (*Id.* at 17). More specifically, the Commissioner refers to Ms. Korb's observations that J.K. only had slight problems acquiring and using information. (*Id.*). Despite Ms. Korb's observations that J.K. had serious problems in reading comprehension, organized oral explanations, giving adequate descriptions, and expressing written ideas, the Commissioner emphasizes that J.K. still completed classes competently. (*Id.*). Therefore, the Commissioner concludes that Ms. Korb's questionnaire is part of the substantial evidence supporting the ALJ's finding that J.K. had less than a marked limitation acquiring and using information. (*Id.*).

The ALJ is not required to refer to every piece of evidence in his decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Instead, reviewing courts determine whether

substantial evidence supports the ALJ's conclusion as a whole. *Id.* When it comes to evidence from nonmedical sources, like teachers, the ALJ's consideration of such evidence is permissive. *See* 20 C.F.R § 416.913(d) (2015) (stating the Commissioner "*may* use evidence from other sources to show the severity of [the child's] impairment") (emphasis added).

Here, the ALJ considered and discussed Ms. Korb's questionnaire. (Tr. 27, 31–33, 35–36). That the ALJ did not refer to Ms. Korb's other findings about J.K.'s limitations is of no consequence. *See Bradshaw v. Colvin*, No. 1:13-CV-1171-JFK, 2014 WL 1415191, at *6 (N.D. Ga. Apr. 14, 2014) (concluding that the ALJ's failure to mention teachers by name did not change the fact that the ALJ considered their evidence). Therefore, reversal is not necessary on the issue of Ms. Korb's questionnaire.

### F.     Typographical Errors

Ms. Burch identifies typographical errors in the ALJ's decision. (Doc. 10, pp. 3–4). Specifically, Ms. Burch points to how, when beginning his analysis of J.K.'s ability to attend and complete tasks, the ALJ states J.K. has a marked limitation. (Tr. 32). But at the end of his analysis, the ALJ concludes that J.K. has a less than marked limitation. (*Id.*). Ms. Burch also points out the ALJ stated Drs. Rowley and Ettinger found that J.K. has a marked limitation in attending and completing tasks. (*Id.*). But that statement is inaccurate because Drs. Rowley and Ettinger actually found a less than marked limitation in that domain. (Tr. 66). Another error Ms. Burch identifies is the ALJ stating Drs. Mihm and Pinnelas found that J.K. has a less than marked limitation in attending and completing tasks, when they actually found a marked limitation. (Tr. 32, 76).

The Commissioner acknowledges these typographical errors. (Doc. 10, pp. 4–5). However, the Commissioner maintains that the ALJ intended to find that J.K. has a less than marked limitation attending and completing tasks based on his consideration of the medical

evidence. (*Id.* at 5–6). The Commissioner argues this finding is supported by substantial evidence. (*Id.*). Because substantial evidence supports finding that J.K. has a less than marked limitation attending and completing tasks, the Commissioner argues that the typographical errors in the ALJ's decision are harmless errors. (*Id.* at 5, n.1).

In *Sawyers v. Colvin*, the court identified two types of typographical errors in Social Security cases. No. 5:12-CV-3610-AKK, 2014 WL 588019, at *8 (N.D. Ala. Feb. 14, 2014). The first type occurs when the typographical error is clear on its face. *Id.* (citation omitted). The second type occurs when the typographical error is "abundantly clear in light of the contents of the record." *Id.* (citations omitted). Regardless of which type it may be, a typographical error is harmless when the ALJ's decision would be the same despite the error. *Armstrong v. Colvin*, No. 6:11-CV-4172-VEH, 2013 WL 1180305, at *4 (N.D. Ala. Mar. 18, 2013).

Here, the ALJ's typographical error is not clear on its face because of the inconsistencies ubiquitous in his analysis. For example, after stating J.K. has a marked limitation attending and completing tasks, the ALJ cites to medical evidence supporting that determination. (Tr. 32). But then the ALJ cites medical evidence finding a less than marked limitation just before he concludes J.K. has a less than marked limitation attending and completing tasks. (*Id.*). The ALJ's error is also not clear in light of the record's contents because, as Ms. Burch correctly points out, he inaccurately cited the opinions of Drs. Rowley, Ettinger, Mihm, and Pinnelas. (*Id.*). Finally, regardless of the type of typographical errors the ALJ's decision may have, because the ALJ failed to discuss the opinions of Drs. Ali and Ramos, I am unable to determine whether his decision

would be the same despite the errors. Therefore, I recommend remanding the decision due to this issue as well.[6]

## V. CONCLUSION

Because the ALJ's decision does not discuss the medical opinions of J.K.'s treating psychiatrists, the Commissioner's decision contains reversible error requiring remand. For that reason, as well as the other reasons included in this Report and Recommendation, it is **RECOMMENDED** that:

(1) The Commissioner's decision be **REVERSED** and **REMANDED** and the case be **DISMISSED**; and

(2) The Clerk of Court enter final judgment in Ms. Burch's favor consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**RECOMMENDED** in Tampa, Florida, on this 16th day of January, 2018.

*[signature: Amanda Arnold Sansone]*
AMANDA ARNOLD SANSONE
United States Magistrate Judge

---

[6] In addition to requesting a reversal of the ALJ's decision, Ms. Burch asks for an immediate award of benefits. (Doc. 10, pp. 4, 14, 24, 29). Remanding a case for an immediate award of disability benefits is appropriate "where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Here, on remand, it is possible for the ALJ to find the opinions of Drs. Ali and Ramos not entitled to considerable weight. If so, the ALJ may still find J.K. not disabled. Therefore, because the cumulative effect of the evidence does not establish disability without a doubt in this case, I recommend only that the ALJ's decision be reversed and remanded.